## SALLIE B. GRUWELL, Respondent, v. NATIONAL COUNCIL KNIGHTS AND LADIES OF SECURITY, Appellant.

### Kansas City Court of Appeals, October 7, 1907.

1. **BENEFIT SOCIETIES: Defense: Statute: Burden of Proof.** To receive benefit of the liberal laws and rules of construction pertaining to the death benefit certificates issued by fraternal beneficiary associations, the association has the burden of proving, not only that it possesses the essential qualifications of such society as prescribed by the statute, but also (if a foreign association) that it had been admitted to do business in this State in the manner provided by the statute. *Held*, defendant failed to make such proof, and a certificate indicating on its face that it was issued by a fraternal beneficiary association, cannot serve to confer a benefit which the law provided shall be acquired only in a particular manner.

2. ———: **Forfeiture: Insurance: Life of Certificate.** An insurance association may protect itself by contractual provisions compelling the prompt payment of the stipulated consideration on pain of forfeiture; but in the absence of such stipulation the policy remains in force during the lifetime of the assured, however great his delinquency in payments.

3. ———: ———: ———: ———: **Remedy.** Where there is no stipulation in the certificate for forfeiture upon non-payment of dues and assessments, the remedy of the association is to deduct the unpaid dues and assessments from the amount of the certificate when paying the beneficiary.

4. ———: ———: ———: ———: **Burden.** An association has the burden of pleading and proving the forfeiture by showing a stipulation in its contract, and then that the forfeiture had in fact occurred prior to the death of the assured; and *held*, the record fails to show such facts in this case.

5. ———: ———: **Suspension: Proof.** A stipulation in the by-laws providing for the suspension of the member upon the failure to pay dues and assesments will not sustain the allegation of forfeiture.

6. ———: ———: **Defense: Pleading: Variance: Evidence.** Where a pleader specifies, he is held to the proof of his specification, and so where the answer sets up in *haec verba* a by-law of the association and offers in evidence of a by-law differing both in word and substance from the one pleaded, the variance is material and the offer properly refused.

7. ——: **Certificate: Death: Defense.** Where the issuance of the certificate and the death of the assured are conceded facts, the beneficiary is entitled to peremptory instruction in the absence of an affirmative defense.

8. ——: ——: **Verdict: Reserve Fund: Practice.** A stipulation in a benefit certificate provided for the deduction of one hundred dollars for the reserve fund, but the answer tendered no such issue. *Held,* the verdict for the face of the certificate was not excessive.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED.

*I. B. Kimbrell* and *Chas. A. Riehl* for appellant.

(1) The court erred in giving the peremptory instruction to find for the plaintiff. Smith v. Woodmen of the World, 179 Mo. 119. (2) The court erred in excluding that part of section 112 of the constitution and laws of 1902, pleaded in defendant's answer, relating to the suspension of members for the non-payment of assessments and dues. Beadle v. Insurance Co., 3 Hill (N. Y.) 161; Bacon on Benefit and Life Insurance, sec. 353. (3) The court erred in excluding section 112 of the laws of defendant company of 1900, similar in terms to the law of 1902 pleaded, relating to the suspension of members for non-payment of assessments. (4) The court erred in instructing the jury to find for the plaintiff in the sum of two thousand dollars for the reason that said policy provided in its face for the retention of fifty dollars on one thousand dollars. (5) The court erred in refusing to submit to the jury the issue of the forfeiture of the policy sued on by reason of the non-payment of assessments and dues for the month of August, 1903, as provided by the terms of said policy and the constitution and laws of the order, on the substantial evidence offered by the defendant.

*E. W. Shannon* and *M. A. Fyke* for respondent.

(1) The answer of the defendant admits the execution and delivery of the policy of insurance and the plaintiff made out a prima-facie case by the introduction of the policy and proof of death; no demurrer to plaintiff's case was interposed. Plaintiff was then entitled to recover unless the defendant pleaded and proved a forfeiture. Bacon, Ben. Societies (3 Ed.), sec. 414; Johnson v. Woodmen of the World, 95 S. W. 951; Mulroy v. Supreme Lodge, 28 Mo. App. 463; Stewart v. Supreme Council, 36 Mo. App. 319; Force v. Supreme Lodge, 41 Mo. App. 106. (2) Under the pleadings, evidence and law of this case the contract of insurance is an entire contract of assurance for life. Insurance Co. v. Statham, 93 U. S. 24; Bacon, Ben. Soc. (3 Ed.), sec. 351. (3) The delivery of the policy sued on put in force a contract of insurance good not for one month only but good for a lifetime and the payment of the premium was not a condition precedent to the continuance of the policy, and, unless the policy contains the provisions which authorize forfeiture of the contract, the contract could not be forfeited by failure to pay subsequent premiums. McMasters v. Insurance Co., 90 Fed. 40. (4) The policy was sued on as an ordinary contract of insurance issued by an ordinary insurance company; it is treated as such in the answer and in the evidence offered by defendant; and being an ordinary life insurance contract, the beneficiary, Sallie B. Gruwell, had a vested interest in said contract which could not be altered or changed without her consent. Bacon, Ben. Societies (3 Ed.), sec. 304; Holland v. Taylor, 111 Ind. 125. (6) The mere reference to the "laws" of defendant was not sufficient. When the answer bases defense upon its by-laws, they must be set up in the answer. Johnson v. Woodmen of the World, 95 S. W. 951; McDonald v. Insurance Co., 154 Mo. 618.

JOHNSON, J.—Action upon a policy of life insurance. In obedience to a peremptory instruction, the jury returned a verdict in favor of plaintiff for the amount prayed in the petition and the cause is here on the appeal of defendant, whose principal contention is that under the pleadings and evidence, a verdict should have been directed in its favor.

For aught disclosed by the allegations of the petition, the contract of insurance was one of an old line or mutual company, but defendant, while admitting its execution, alleges in the answer that it is one falling within the operation of the laws applicable to fraternal beneficiary associations. The contract itself recites that it is a "beneficiary certificate issued by the National Council of the Knights and Ladies of Security" to Wm. C. Gruwell, a member of Success Council No. 941, located at Kansas City, State of Missouri," and provides that "in consideration of the premises and in accordance with and under the provisions of the constitution and laws of the order now in force or that may be hereafter enacted . . . the said National Council hereby agrees to pay to Sallie B. Gruwell, bearing the relation to said member of wife, the sum of $2,000," etc. Among the stipulations is one providing that "this certificate and contract is and shall be subject to forfeiture for any of the causes of forfeiture which are now prescribed in the laws of the order, or for other cause or causes of forfeiture which may be hereafter prescribed by this order by the amendment of said laws."

The answer alleges that defendant "was at all times herein mentioned a fraternal beneficiary society organized and incorporated as a body corporate and politic under and by virtue of the laws of the State of Kansas and doing business in the State of Missouri by permission and license of said State . . . that at the time of the death of the said Willam C. Gruwell, he had not performed all of the conditions of said contract

upon his part, nor had he complied with all of the provisions of the constitution and laws of the order, in force at that time, nor was he a member of the order in good standing at the time of his death, for that at the execution of said contract and at all times between the date of said contract and the death of the said William C. Gruwell, there were laws of said order in force and effect, in the words and figures as follows, to-wit: 'The financial secretary of each subordinate council shall keep a book wherein all assessments shall be entered against each member holding a valid certificate. Such entry shall be made bearing date of the first day of the month for the regular assessment, or any special or extra assessment which shall have been levied for that month, which must be paid on or before the last day of the month. All assessments for any month shall become due and payable on the first day of that month. The certificate of each member who has not paid such assessment or assessments on or before the last day of the month, shall by the fact of such non-payment, stand suspended without notice, and no act on the part of the council or any officer thereof or the National Council shall be required as essential to such suspension, and all rights under said certificate shall be forfeited. No right under said certificate shall be restored until it has been duly reinstated by compliance by the member with the laws of the order with reference to reinstatement,' which said law, at the time of the death of the said William C. Gruwell, was known as section 112 of the Laws of 1902, and said section had been and was in force and effect from July 1, 1902, up to and including the time of the death of the said William C. Gruwell."

Other sections of laws enacted by defendant in 1902 are then set out *in haec verba,* but none of them deals directly with the subject of the forfeiture of the

certificate, or the suspension of the member except section 123, which, it is stated, was in-force at the time the certificate was issued (September 21, 1901), and was re-enacted when the laws were revised in July, 1902. It is as follows: "Each member of the subordinate council shall pay into the funds thereof, as monthly dues, such sum as shall be prescribed by the laws thereof, to commence with the date of initiation. Any member who neglects or refuses to pay these dues, as fixed by the laws of the council, within the time provided by said by-laws shall, by such failure, stand suspended from the order."

After alleging the amount of dues and assessments, Mr. Gruwell was required to pay monthly at stated periods in order to prevent a forfeiture of the certificate and his suspension as a member, it is alleged that "he wholly failed to pay or cause to be paid the said regular assessment and dues for the month of August, 1903, and by said failure so to pay within said month of August, 1903, became suspended as a member of said defendant order and all rights under said certificate became and were wholly forfeited thereby," and that, thereafter, and to the date of his death which occurred on the second day of January, 1905, he failed to pay any of the monthly dues and assessments which would have accrued during that period had he remained a member in good standing. Other facts are alleged in the answer, but their repetition here is not essential to a proper understanding of the questions which, in our view, are determinative of the rights of the parties. The reply is a general denial.

To receive the benefit of the liberal laws and rules of construction pertaining to death benefit certificates issued by fraternal beneficiary associations, defendant had the burden of pleading and proving not only that it possessed the essential qualifications of such societies as prescribed in section 1408, Revised Statutes 1899, but

also that, being incorporated under the laws of another State, it had been admitted to do business in this State in the manner provided in section 1410, Revised Statutes 1899. The evidence adduced by defendant falls short of showing that it was qualified for admission into this State as a fraternal beneficiary association, but had that fact been made to appear, we still would be compelled to hold that the contract cannot be considered otherwise than as one of regular insurance, since there is no proof in the record that defendant was admitted to do business in this State as a fraternal order. It averred in the answer that it was "doing business in the State of Missouri by permission and license of said State," and that fact, if it existed, should have been established by proof. When defendant admitted the execution of the certificate on which plaintiff based a cause of action as upon a policy of ordinary life insurance, and further admitted the fact of the death of the assured, the prima-facie right of plaintiff to a recovery was complete and could be defeated only by proof of defensive facts and, obviously, the burden of pleading and proving such facts was cast on defendant, the party who affirmed their existence. It matters not that the certificate indicates on its face that it was issued by a fraternal beneficiary association, the form of the contract cannot serve to confer a benefit which the law provides may be acquired only in the particular manner prescribed. [Baltzell v. Modern Woodmen, 98 Mo. App. 153; Logan v. Insurance Co., 146 Mo. 114; Brassfield v. Knights of Maccabees, 92 Mo. App. 102; Herzberg v. Modern Brotherhood, 110 Mo. App. 328; Johnson v. Sovereign Camp, 119 Mo. App. 98; Morton v. Supreme Council, 100 Mo. App. 76.] It follows that defendant must be denied the benefit of the laws and rules relating to fraternal orders and that the certificate before us must be treated as one issued by a corporation of another class.

Thus regarding it, the next subject of inquiry is that of the alleged forfeiture of the certificate in consequence of the delinquency of the assured with respect to the payment of dues and assessments levied in accordance with the terms of the contract. The record discloses some conflict between the parties relative to matters of fact. On behalf of plaintiff, the evidence tends to show that in April, 1903, the assured was stricken with the malady from which he died; that he continued paying his dues and assessments and paid those levied for the month of August; that without any cause he was suspended and his certificate declared forfeited by defendant on the false ground that he had become delinquent in making the August payment and that plaintiff, when she remonstrated with one of the officers of the local lodge of which her husband was a member, was informed he would not be reinstated, nor would the ban of forfeiture be removed from the certificate except on the condition that a physical examination would disclose that he was then in good health. As the assured could not hope to pass such examination, nothing more was done until about one month before his death when he employed an attorney who made a tender to defendant of the amount sufficient to reinstate the certificate and to restore the assured to membership in the order. The tender was refused. On behalf of defendant, the evidence very strongly tends to show that the assured did not pay the August assessment and dues and made no effort of any kind toward reinstatement for a period of about seventeen months when, being in fear of death, he attempted to have his rights under the certificate restored by a tender of the accrued dues and assessments.

We will adopt the statement of facts most favorable to defendant in our consideration of the questions arising under its insistence that the court erred in peremptorily instructing a verdict for plaintiff. The stipu-

lation in the certificate that the contract "shall be subject to forfeiture for any of the causes of forfeiture which are now prescribed in the laws of the order or for other cause or causes of forfeiture which may be hereafter prescribed by this order by the amendment of said laws," had the effect of making the laws of the order relating to forfeiture then in force an integral part of the contract of insurance.

Though the law always looks with an unfriendly eye on provisions in contracts for the forfeiture of acquired rights, where the parties clearly stipulate for such forfeiture and it does not appear to be obnoxious to any sound reason of public policy, courts will enforce the contract the parties themselves have made. No reason appears for denying to the insurer the protection of a contractual provision compelling the prompt payment of the stipulated consideration on pain of forfeiture. Indeed, it is difficult to perceive how any insurance company, whether old line, mutual, or fraternal, could do business at all if it permitted its policies to remain in force indefinitely after the assured had ceased to pay agreed premiums. Forfeiture for non-payment is a necessary means to avert disaster to the enterprise and it is well settled that stipulations in the contract which provide that non-payment *ipso facto* shall work a forfeiture, without notice to the delinquent, should be enforced. But, in the absence of any stipulation in the contract for forfeiture on the ground of non-payment, the policy will remain in force during the lifetime of the assured, however delinquent he may have become with respect to agreed payments. The idea that the contract of insurance remains in force only during the period for which a premium has been paid, though it has the support of respectable authority, we think is opposed to sound reason, as well as to the weight of authority. As was said by the Supreme Court of the United States in Insurance Co. v. Statham, 93 U. S.

24: "The contract is not an assurance for a single year with the privilege of renewal from year to year by paying an annual premium, but it is an entire contract of assurance for life, subject to discontinuance and forfeiture for non-payment of any of the stipulated premiums. . . . It often happens that the assured pays the entire premium in advance or in five, ten, or twenty installments. Such installments are clearly not intended as the consideration for the respective years in which they are paid, for after they are all paid, the policy stands good for the balance of the life of the insured without any further payment. Each installment is, in fact, part consideration of the entire insurance for life. It is the same thing where the annual premiums are spread over the whole life. . . . There is no proper relation between the annual premium and the risk of assurance for the year in which it is paid." [Bacon on Benefit Societies (3 Ed.), sec. 351.]

In the present case, the monthly assessments, in effect, were nothing more nor less than installments of a consideration which the assured had agreed to pay for the undertaking of defendant to pay his beneficiary an agreed indemnity at his death. Without any agreement that the failure to pay any such installment or installments would work a forfeiture of the right to enforce the undertaking of defendant, the only recourse open to defendant, in the event the assured died delinquent, was to deduct the amount of the unpaid premiums from the amount the certificate required it to pay to the beneficiary.

It results from these principles that the burden is on defendant to plead and prove the forfeiture which it claims obtained prior to the death of the assured. That burden required it to show, first, that the contract contained an agreement for the forfeiture of the rights of the assured to the beneficiary on account of non-

payment of premium installments, and then that such forfeiture, in fact, had occurred.

As we have shown, the certificate refers generally to the laws of the order dealing with this subject and makes them a part of the contract. It was incumbent upon defendant to plead and prove the laws under which it claimed the forfeiture had occurred. It did plead *in haec verba* two such laws of the order, *viz.*, sections 112 and 123. The first of these provides for a forfeiture of the certificate in the event of the nonpayment of dues and assessments for a prescribed period, but the second provides only for a suspension of the member in case he fails to pay his dues to the order, and not for the forfeiture of the death benefit certificate. Defendant adduced proof of the existence of section 123, but failed entirely to prove that of the law pleaded as section 112. It appears that sometime after the certificate was issued, the laws were amended and some change was made in section 112, but that section, as it appears in the laws in force at the time the certificate was issued, as well as in those adopted after that event, differs both in word and substance from the section pleaded in the answer; and the learned trial judge, noting the material variance between them, properly refused to receive the proof offered. The rule is elemental that where the pleader specifies, he is held to the proof of his specifications. He will not be permitted to plead one instrument as a foundation of his cause of action or defense and prove another.

Plaintiff was advised by the answer to prepare to encounter at the trial proof of a certain law on which defendant based its principal defense. To require her to meet, without notice, another law, substantially different from that pleaded, would be violative of the principle which always accords to a party to an action in court a fair opportunity to prepare to meet the charges of his adversary. The evidence adduced by defendant

thus failing to show the existence of any contractual provision for the forfeiture of the certificate, the court could not do otherwise than peremptorily instruct a verdict for plaintiff, since the issuance of the certificate and the death of the assured are conceded facts which, as we have said, entitled her to a recovery in the absence of an affirmative defense.

Point is made that the judgment is excessive in the sum of one hundred dollars which defendant, under a stipulation in the certificate was entitled to deduct for the reserve fund, but it cannot be entertained since no such issue was tendered in the answer.

The judgment is affirmed. All concur.