## ELIZABETH EDWARDS, Respondent, v. AMERI-CAN PATRIOTS, Appellant.

### Kansas City Court of Appeals, March 4, 1912.

1. **FRATERNAL BENEVOLENT ASSOCIATIONS: Ultra Vires.** A plea of *ultra vires* cannot be invoked where the contract is executed and especially where the association has been receiving the premiums on the policy with knowledge.

2. ————: **Foreign Fraternal Benevolent Associations: Life Insurance.** Although a foreign association is organized as a fraternal benevolent association and licensed as such in this state, its policies will be considered regular life insurance contracts where they contain a definite agreement as to the benefits to accrue and a fixed amount and terms of payments of premium and no reservation of authority to vary the terms or to raise the rates of premium.

3. ————: **Consolidation Contracts.** The provisions of a contract consolidating two life insurance companies or fraternal associations can only be incorporated in the contract of insurance by direct reference to it, showing that the parties intended to make the terms of the former a part.

4. ————: **Committee of Appeals: Arbitration.** A provision in a benefit certificate requiring an appeal to a committee of appeals as a condition precedent to the commencement of suit is void where the question was one of law and not of fact.

Appeal from Boone Circuit Court.—*Hon. D. H. Harris,* Judge.

AFFIRMED.

*E. W. Hinton* for appellant.

*Gillespy & Conley* for respondent.

BROADDUS, P. J.—This suit is to recover on a policy issued by the American Benevolent Association on the life of A. L. Edwards for the benefit of Elizabeth Edwards, his wife. The defendant is an Illinois corporation, alleged to be doing business in

this state. The policy or certificate of insurance was issued on the 4th day of December, 1895. By the terms of the policy upon satisfactory proof of the death of the insured, the company agreed to pay the plaintiff $1,000, provided that the policy has been in force ten years and that the insured is in good standing at the date of his death, less any disability benefits theretofore paid.

The insured died on the —— day of June, 1910, and the plaintiff furnished all the required proofs of his death. During the life of the insured defendant paid him in disability benefits the sum of ninety dollars, and it is alleged that there is still due plaintiff on said policy $910.

It is alleged that on the 26th day of August, 1907, the defendant assumed and agreed to pay the benefits promised in said policy; and that the deceased complied with all the conditions of the policy on his part; and paid all dues and assessments.

The answer consisted of a general denial and the following special defenses, viz.: 1st: That the defendant was a fraternal benefit association, incorporated under the laws of the state of Illinois; and that by its charter it was prohibited from accepting the deceased as a member because at the time of the assumption he was above the age limit of sixty years; and for that reason the attempted assumption was *ultra vires* and void. 2d. As a partial defense, that under the constitution (of the order) the certificate was chargeable with the difference between the assessment rate provided in such certificate, and the higher rate charged by defendant, multiplied by deceased's expectancy, based on his age when he became a member of the defendant association. 3d. That the plaintiff had failed to appeal from the action of defendant's directors in rejecting her claim in part; and that under its constitution an appeal to the committee of

appeals was made a condition precedent to an action at law.

The reply was a general denial and estoppel to plead *ultra vires,* etc. When the policy was issued the deceased was fifty-one years of age. The defendant was incorporated as a Fraternal Beneficiary Association under the Illinois Act of 1893, under the name of the Loyal Sons of America, and by amendment, its name was changed to the American Patriots. The Illinois statute under which the defendant was incorporated is similar to section 7109, R. S. 1909, defining Fraternal Benevolent Associations. The act provides that the limits of the age of applicants for membership shall not exceed sixty years. The articles of the association provide that the funds for the payment of benefits shall be derived from assessments upon the members, and that payment shall be subject to compliance by the member with the constitution, contract, rules and laws of the society, subject to the laws of the state of Illinois.

In August, 1907, an agreement was entered into between the American Benevolent Association and defendant, called a contract of consolidation, which provided for the taking over of the members of the former association. This document recites that it is proposed to consolidate said associations into one organization upon the following condition, among others: That the consolidated society shall continue to transact business under the charter, constitution and laws of the American Patriots now in force, subject to amendment or repeal as experience or condition may require.

The defendant issued to the deceased its certificate of assumption containing the following provision: In consideration of the contract of consolidation by and between the American Patriots of Springfield, Illinois, and the American Benevolent Association of St. Louis, the American Patriots hereby assumes and

agrees to pay the benefits promised in Certificate No. 5108, issued to A. L. Edwards by the American Benevolent Association; provided that the member is in good standing at the date of death or disability insured against.

When this change was effected in August, 1907, the insured was past sixty-three years of age, at which time defendant had no assessment rate for persons above 55 years of age. Afterwards the rate of assessment was raised and a change was made in the constitution providing that members might continue their membership by paying the rate of assessment which was in force for his certificate on May 1st, 1908, and be charged with the difference between the rate so paid and the increased rate. The deceased continued to pay the rate named in the certificate. When proofs of death were made, the defendant's board of directors made the deduction from the amount of the policy, the amount so charged in the difference of rates. The plaintiff refused to accept the reduction, but did not appeal from the decision of the board of directors to the committee of appeals as provided by the constitution. It is necessary to state further that at the time defendant entered into the assumption contract it was not licensed to do business in this state, but was so licensed afterwards and during the life of the policy in suit.

The points relied on for a reversal are, 1st: That the attempted assumption of the benefit certificate was *ultra vires* and void because defendant was prohibited by its charter from accepting a member above the age limit. 2d. That since defendant under its charter could only raise funds for the payment of death benefits by means of assessments, it had the inherent right to raise the assessment whenever necessary, and that this right was preserved by the provision of the agreement taking over the members of the Benevolent Association, that the business should be continued un

der its charter and constitution, subject to such amendments as experience or conditions might require. 3d. That the provision of the constitution requiring an appeal to the committee of appeals was a reasonable condition precedent, and a failure to comply with it barred the plaintiff's action.

As to the first contention that the attempted assumption is void because the defendant was prohibited by its charter from accepting members above the age limit, it is said: "A foreign insurance society with a license to do business in this state, could not make any class of persons beneficiaries of benefit certificates who are not named in the Missouri laws." [Loyd v. M. W. A., 113 Mo. App. 19; Pauley v. M. W. A., 113 Mo. App. 473; Missey v. Knights and Ladies of Honor, 147 Mo. App. 137.] And furthermore, it is held that notwithstanding the foreign beneficiary association had not been licensed to do business in the state at the time it issued the policy, it was such an association, although it would not be exempt from the section of the general statute providing that suicide of the insured would be no defense to an action on the policy. [Schmidt v. Foresters, 228 Mo. l. c. 706 and cases cited.] Thus admitting appellant's premises it does not follow that the contract of assumption of the policy of the deceased was *ultra vires,* although it was so held by the St. Louis Court of Appeals in Smoot v. Bankers Life Assn., 138 Mo. App. l. c. 461. In a recent opinion handed down by this court in Knott v. Security Mutual Life Ins. Co., it is held, that the plea of *ultra vires* cannot be invoked where the contract is executed, and especially where the association has been receiving the premiums on the policy with knowledge.

The law is clearly stated in Bank v. Trust Co., 187 Mo. 529, viz.: "An examination of all the authorities upon this subject indicates clearly a distinction in the exercise of powers by public corporations and

private business corporations, and it will be observed that the further distinction is made between contracts strictly *ultra vires* the corporation and those where only in excess of the corporate grant of power. This distinction was clearly made in the case of Chenoweth v. Pacific Express Co., 93 Mo. App. 185. It was said by the court in that case: 'Whatever may be the proper rule in those cases where an *ultra vires* contract is entered into by a public corporation, exercising governmental functions, we do not think in a case like the present where the contract entered into, though in excess of the chartered powers of the corporation, has been fully performed by the party seeking its enforcement, that the corporation can refuse to proceed, and when sued for a breach of the contract, shelter itself behind the defense of *ultra vires.*" The question was raised in Cass Co. v. Ins. Co., 188 Mo. l. c. 13-14, where the court's decision is to the same effect. It seems to us that upon the authority of the appellate courts of this state, and upon principles of right and justice the plea of *ultra vires* pleaded in this case is no defense to the action. And it might further be said that at the time of defendant's assumption contract the deceased was not an applicant for insurance—he was already insured, and the contract necessarily comprehended him within its terms.

Admitting appellant's premises, still it does not follow because it was a fraternal association that the policy in suit is a fraternal beneficiary association policy. The policy contains a definite agreement as to the benefits to accrue and a fixed amount and terms of the payments of the premiums. And there is no reservation of any authority in the company which issued it to vary any of its terms. There is no express or implied authority that authorized a raising of rates of premiums, therefore, it must be considered as a regular life insurance and accident contract.

The consolidation contract can only be incorporated in the contract of insurance except by direct reference to it, showing that the parties intended to make the terms of the former a part. [17 Am. & Eng. Enc. of Law, p. 10.] If the reference is merely for a particular purpose it becomes a part of the writing only for that purpose. [Idem; Baltimore v. Stewart, 79 Md. 487; Short v. Van Dyke, 50 Minn. 286; Riley v. Brooklyn, 46 N. Y. 444.] There is no reference in the said contract except that in consideration of the "contract of consolidation the defendant assumes and agrees to the benefits promised in the policy," that is to say, that it is by virtue of that contract that the promise is made, not to the insured, but to the other contracting corporation. The consideration passed from the latter to the former corporation—a transaction in which the insured had nothing to say. His contract passed to the appellant *nolens volens* so far as he was concerned. It is true he accepted the substituted corporation and paid his dues regularly, but he could not do otherwise without letting his contract lapse.

Finally it is urged that plaintiff is debarred from recovery for the reason that she did not submit her claim to the committee of appeals as the laws of the order required, as a condition precedent to her right to maintain this suit. Similar provisions have been considered by the courts of the different states and of this state. It is held that where the insured was required to submit his claim both as to the law and facts to arbitrators as a condition precedent to his right to institute suit, the provision was void. [Easter v. Brotherhood of American Yeoman, 154 Mo. App. 456.] The rule adopted in Iowa is peculiarly applicable. It is that the provision for a reference to arbitration precedent to an action on a policy is valid so far as it relates to the determination of questions of fact. [Knapp v. Brotherhood of American

Yeoman, 117 N. W. 298.] The refusal to pay part of plaintiff's claim was a question of law and not of fact. And so it is held in Brown v. Supreme Court I. O. O. F., 72 N. Y. Supp. 808.

Plaintiff made out a clear case. Affirmed. All concur.